HENDERSON GALLAGHER & KANE
A Law Corporation

J. PATRICK GALLAGHER     3417-0
JENNIFER M. PALMER      9483-0
Topa Financial Center
745 Fort Street, Suite 1550
Honolulu, Hawaii 96813
Tel. No. (808) 531-2023

Attorneys for Plaintiff
NAUTILUS INSURANCE COMPANY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | ) ) ) | CIVIL NO. CV 11-00172 JMS -KSC (Contract) |
| Plaintiff, | ) | **FINDINGS AND** |
| vs. | ) | **RECOMMENDATION TO GRANT** |
| | ) | **PLAINTIFF NAUTILUS** |
| SER TRUCKING, INC., | ) | **INSURANCE COMPANY'S** |
| | ) | **MOTION FOR DEFAULT** |
| Defendant. | ) | **JUDGMENT**; EXHIBIT "A" |
| | ) | (JUDGMENT) |
| _____ | ) | |

### FINDINGS AND RECOMMENDATION TO GRANT
### PLAINTIFF NAUTILUS INSURANCE COMPANY'S
### <u>MOTION FOR DEFAULT JUDGMENT</u>

Plaintiff Nautilus Insurance Company's ("Nautilus") Motion for Default

Judgment filed August 17, 2011 [Doc. No. 10] came for hearing on October 5, 2011.

J. Patrick Gallagher, Esq. appeared for Nautilus. Defendant SER Trucking, Inc. ("SER

Trucking") did not appear and did not file a Memorandum in Opposition to the Motion. For the reasons stated herein, the Court finds that Nautilus is entitled to default judgment in its favor and recommends that Judgment, attached as Exhibit "A", be entered in this matter.

## I.   **BACKGROUND**

### A.   **Procedural History**

On March 15, 2011, Nautilus filed a Complaint for Declaratory Judgment in this action seeking a declaration of the rights and obligations of the parties under the a series of commercial general liability ("CGL) policies issued by Nautilus to SER Trucking with respect to claims asserted in two underlying civil actions. *See* Nautilus Complaint, ¶6. Service was made upon SER Trucking on June 14, 2011. *See* Doc. No. 6. The deadline for SER Trucking to answer or otherwise plead has lapsed. As of the date of the filing of Nautilus's Motion, SER Trucking has not answered or otherwise appeared in this action. On July 12, 2011, Nautilus filed its Motion for Entry of Default. *See* Doc. No. 8. The Clerk of the Court entered default against SER Trucking on July 12, 2011. *See* Doc. No. 9.

### B.   **Underlying Lawsuits**

Claims have been asserted against SER Trucking in two underlying civil actions, captioned <u>John Smith, et al. v. David Souza, et al.,</u> Civil No. 08-1-1540-07

("Smith Lawsuit") and <u>Winston Naone, et al. v. David Souza, et al.</u>, Civil No. 08-1-1541-07 ("Naone Lawsuit"), pending in the Circuit Court of the First Circuit, State of Hawaii (collectively, the "Underlying Lawsuits"). The Underlying Lawsuits concern adjacent lots developed with single family homes and sold by David and Carol Souza (the "Souzas"). In general, the underlying plaintiffs allege that their homes contain numerous construction defects, as well as an unauthorized cesspool. As the allegations pertain to SER Trucking, the underlying plaintiffs allege that the Souzas engaged and allowed third parties (including SER Trucking) to engage in illegal dumping on one lot, which negatively impacted both lots.

On July 28, 2008, John and Charmaine Smith (collectively, the "Smiths") filed a Complaint in the Smith Lawsuit against the Souzas and others, including Doe Corporations 1-10. *See* Nautilus Complaint, Ex. "1". The Smiths allege that on January 6, 2007, they agreed to purchase property from the Souzas located at 86-340 Puhawai Road for the sum of $620,000.00. *Id.* at ¶9. Subsequent to their purchase of the property, the Smiths allege that they "discovered numerous building defects and problems with the construction including, but not limited to, electrical problems, water meter and electrical meter problems, settlement of the foundation and cracking, improper drainage of the lot, improper and illegal cesspool, improper staking and the zoning use of the property." *Id.* at ¶11. The Smiths further allege that they "discovered

3

that there has been illegal dumping on the adjacent lot by Defendants SOUZA, which now causes the flooding of the underground cesspool." *See id.* The Smiths allege that the illegal dumping "contains hazardous wastes which, together with the illegal cesspool, may contaminate [the Smiths'] property if there is flooding due to the obstructed streambed and cause contamination of the ground water during flooding in violation of EPA regulations." *Id.* The Complaint in the Smith Lawsuit consists of the following six claims: (1) Negligence and Negligent Misrepresentation; (2) Breach of Contract; (3) Violation of H.R.S. Chapter 480; (4) Breach of Fiduciary Duty; (5) Non-Disclosure and Concealment; and (6) Unjust Enrichment and Restitution.

Also on July 28, 2008, Winston and Kathy Naone (collectively, the "Naones") filed a Complaint in the Naone Lawsuit against the Souzas and others, including Doe Corporations 1-10. *See* Nautilus Complaint,, Ex."4". The Naones allege that on July 30, 2007, they agreed to purchase property from the Souzas located at 86-344 Puhawai Road for the sum of $890,000.00. *Id.* at ¶9. Subsequent to their purchase of the property, the Naones allege that they "discovered numerous building defects and problems with the construction including but not limited to, electrical problems, plumbing problems regarding the illegal cesspool, improper staking and the fact that the electrical and water meters were not found." *Id.* at ¶11. The Naones further allege that they "discovered that there has been illegal dumping by Defendants SOUZA, in

4

violation of the antidumping rules of the City and County of Honolulu." *Id*. The illegal dumping allegedly consists of "hazardous material which may contaminate [the Naones'] property and the illegal cesspool if there is flooding due to the obstructed streambed causing a contamination of the ground water during flooding in violation of EPA regulations." *Id*. The Complaint in the Naone Lawsuit consists of the following six claims: (1) Negligence and Negligent Misrepresentation; (2) Violation of H.R.S. Chapter 324H; (3) Violation of H.R.S. Chapter 322, Part II; (4) Breach of Contract; (5) Violation of H.R.S. Chapter 480; (6) Breach of Fiduciary Duty; and (7) Non-Disclosure and Concealment.

On December 5, 2008, the Smiths and Naones filed motions for identification of Doe Defendants, identifying SER Trucking as "Doe Corporation 1" in each respective lawsuits. *See* Nautilus Complaint, Exs. "2" and "5". On December 26, 2008, the Smiths and Naones filed errata to their motions which included an Affidavit of Gary Y. Shigemura. *See id.* at Exs. "3" and "6". With respect to SER Trucking, each affidavit states:

> *That Defendant SER TRUCKING, INC., a Hawaii corporation identified herein is proper party Defendant in this action, paid DAVID SOUZA and ISLAND TOPSOIL, LLC to dump solid waste at the above property.*
>
> . . .

5

> *That all the Doe Defendants identified herein contributed or have contributed to the dumping of solid waste materials accumulated in the property at 86-344 [or 86-340] Puhawai Road, Waianae, Hawaii, including but not limited to waste tires, partially buried tires, concrete rubble greater than eight inches in diameter, and partially buried rebar.*

*Id.* at ¶¶ 5, 10 .

The motions for identifications were granted on March 10, 2009 in the Smith Lawsuit, and on April 30, 2009 in the Naone Lawsuit, identifying SER Trucking as "Doe Corporation 1." *See* Nautilus Complaint, ¶¶ 15, 26. On July 6, 2010, the Smith and Naone Lawsuits were consolidated. *See id.* at ¶ 29.

### C.    The Nautilus Policies

SER Trucking is the named insured on six CGL policies issued by Nautilus under the following policy numbers, which are ordered chronologically from the oldest to the most recent: NC260126, NC349181, NC438891, NC562305, NC664271, NC803433 (collectively, the "Nautilus Policies"). *See* Nautilus Complaint, ¶¶ 32-44, *Id.* at Exs. "8" - "13"). Each policy was effective for a one-year period from June 19, 2003 until June 19, 2009.  *See id.*

The Nautilus Policies, under CGL Coverage Form (CG 00 01 10 01) for Policy Nos. NC260126, NC349181, NC438891 and NC562305 and under CGL Coverage

Form (CG 00 01 12 04) for Policy Nos. NC664271 and NC803433, provide in

relevant part:

> *SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY, DAMAGE LIABILITY*
>
> *1.    Insuring Agreement:*
>
>> *a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . .*
>
>> *b.    This insurance applies to "bodily injury" and "property damage" only if:*
>
>>> *(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*
>
>>> *(2)    The "bodily injury" or "property damage" occurs during the policy period;*

The Nautilus Policies contain the following definitions:

> *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. . .*

7

*"Property damage" means:*

a.    *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*

b.    *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

The Nautilus Policies also contain certain relevant exclusions, including the "Total Pollution Exclusion" and the "Auto Exclusion". The Auto Exclusion in each policy[1] is found in *SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, subsection 2,* and provides in relevant part:

*This insurance does not apply to:*
    . . .
g.    *Aircraft, Auto Or Watercraft*

*"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."*

---

[1]      For Nautilus Policy Nos. NC260126, NC349181, NC438891 and NC562305, the Auto Exclusion appears in CGL Coverage Form (CG 00 01 10 01) and for Policy Nos. NC664271 and NC803433, the Auto Exclusion is found under CGL Coverage Form (CG 00 01 12 04), *SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, subsection 2.*

In each policy, the terms "auto" and "loading and unloading" are defined in

*SECTION V - DEFINITIONS*, as follows[2]:

> *"Auto" means a land motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment"*
>
> *"Loading or unloading" means the handling of property:*
>
> a.     *After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft of "auto";*
>
> b.     *While it is in or on an aircraft, watercraft or "auto"; or*
>
> c.     *While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;*
>
> *But "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft, or "auto".*

The Total Pollution Exclusion is contained in each of the Nautilus Policies. The

language of this exclusion is identical in each of the policies except that Nautilus

---

[2]     For Nautilus Policy Nos. NC260126, NC349181, NC438891 and NC562305, the definitions for "auto" and "unloading and unloading" are contained in CGL Coverage Form (CG 00 01 10 01) and for Policy Nos. NC664271 and NC803433 in Coverage Form (CG 00 01 12 04), *SECTION V - DEFINITIONS.*

Policy No. NC803433 has some deleted and added language which is indicated by underlining for deleted language and bracketing for added language or emphasis[3]:

> [A.]   Exclusion *f.* *under* [of] **Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury and Property Damage Liability** *is [replaced] by the following:*
>
> *This insurance does not apply to:*
>
> f.   *Pollution*
>
>> (1)   *"Bodily Injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.*

"Pollutants" is defined as follows in each of the Nautilus Policies, except that Policy No. NC803433 contains added language which is indicated by bracketing[4]:

> *"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes [but is not limited to]  materials to be recycled, reconditioned or reclaimed.*

---

[3]   In Nautilus Policy Nos.  NC260126, NC349181, NC438891, NC562305, and NC664271, the Total Pollution Exclusion is found in Form CG 21 49 09 99. In Policy No. NC803433, the relevant language is found in Form L223 (06/07).

[4]   For Nautilus Policy Nos. NC260126, NC349181, NC438891, NC562305, and NC664271, the definition of "pollutants" is found either in CGL Coverage Form (CG 00 01 10 01) or (CG 00 01 12 04), *SECTION V - DEFINITIONS.* In Nautilus Policy NC803433, the definition of "pollutants" is found in the Exclusion - Total Pollution Endorsement (Form L223 (06/07)).

### D. **Reservation of Rights**

SER Trucking tendered defense of the Underlying Lawsuits to Nautilus under the Nautilus Policies. On February 24, 2010, Nautilus issued a reservation of rights letter to SER Trucking in which Nautilus agreed to defend SER Trucking in the Underlying Lawsuits under a full reservation of its rights, including the right to bring a declaratory judgment action to determine the obligations and responsibilities of the parties under the Nautilus Policies. *See* Nautilus Complaint, Ex. "7".

## II. **DISCUSSION**

### A. **Standard of Review**

Rule 55(b) of the Federal Rules of Civil Procedure provides that default judgment may be entered by the Clerk if the defendant has defaulted by failing toappear and plaintiff's claim is for a "sum certain or for a sum which can bycomputation be made certain[.]" Fed.R.Civ.P. 55(b)(1). In all other cases, Rule 55(b) provides:

> In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or

11

make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

    (A)    conduct an accounting;
    (B)    determine the amount of damages;
    (C)    establish the truth of any allegation by evidence; or
    (D)    investigate any other matter.

Fed.R.Civ.P. 55(b)(2).

The grant or denial of a motion for the entry of default judgment is within the discretion of the court. Haw. Carpenters' Trust Funds v. Stone, 794 F.2d 508, 511-12 (9th Cir. 1986). Where the defendant has been defaulted, "[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-918 (9th Cir. 1987) (citing Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977)). As default judgments are ordinarily disfavored, cases should be decided upon their merits wherever reasonably possible. Eitel v. McCool 782 F.2d 1470, 1472 (9th Cir.1986). The Ninth Circuit has established the following factors, which may be considered by courts in exercising discretion as to the entry of a default judgment:

(1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7)

12

the strong policy underlying the Federal Rules of Civil
Procedure favoring decisions on the merits.

*Id.* at 1471-72 (*citing* 6 Moore's Federal Practice para. 55-05[2], at 55-24 to 55-26).

**B.    Default Judgment Is Appropriate as the Eitel Factors
Have Been Satisfied**

Upon consideration of the *Eitel* factors, the Court finds that the entry of default

judgment against SER Trucking is appropriate and discusses each factor in turn.

**1.    Possibility of Prejudice to Nautilus**

Failure to grant the Motion would clearly Nautilus, which has actively litigated

this action. The Complaint for Declaratory Judgment was served on June 14, 2011 and

the Clerk entered default on July 12, 2011. SER Trucking's failure to respond has

delayed this case for months. Meanwhile Nautilus has been providing a defense to its

insured pursuant to reservation of its rights, and is entitled to a resolution of whether

coverage is owed under the Nautilus Policies.

**2.    Merits of Nautilus's Claims**

The merits of Nautilus's claims weigh in favor of default judgment. Under

Hawaii law, an insurer's duty to defend its insured is contractual in nature. Sentinel

Ins. Co. v. First Ins. Co., 76 Haw. 277, 287 (1994)("Sentinel"). "[L]iability insurers

have the same rights as individuals to limit their liability, and to impose whatever

conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy." First Ins. Co. v. State of Hawaii, 66 Haw. 413, 423 (1983)("First Ins.") (quoting 6B J. Appleman, Insurance Law & Practice § 4255 at 40 (Buckley 1979)). As such, courts must look to the language of the insurance policy involved to determine the scope of the duty owed, if any, and apply the general rules of contract construction. Dairy Rd. Partners v. Island Ins. Co., 92 Haw. 398, 411 (2000). "[T]he terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended." *Id.*; First Ins., 66 Haw. at 424. The insured has the burden of establishing coverage under an insurance policy. Sentinel, 76 Haw. at 291 n. 13. On the other hand, the insurer has the burden of establishing the applicability of an exclusion. *Id.* at 287.

For several reasons, Nautilus has no duty to defend or indemnify with respect to the claims against SER Trucking in the Underlying Lawsuits. First, the claims against SER Trucking in the Underlying Lawsuits fail to constitute an "occurrence" within the meaning of the Nautilus Policies. The Nautilus Policies afford liability coverage only for the damages for which an insured is legally liable because of "bodily injury" or "property damage" caused by an "occurrence." An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially

the same general harmful conditions . . ." The Underlying Lawsuits do not allege that SER Trucking engaged in or contributed to dumping accidentally. Instead, the allegations indicate that the dumping by SER Trucking and/or the payment to David Souza and Island Topsoil to dump solid waste was done deliberately in that SER Trucking paid Defendants Souza and Island Topsoil, LLC to dump solid waste at the Smiths and Naones' properties. *See* Nautilus Complaint, Exs. "3" and "6" at ¶5. Such alleged actions do not constitute an accident or an "occurrence" under the Nautilus Policies. *See* <u>Hawaiian Holiday</u>, 76 Haw. at 170 ("in order for the insurer to owe a duty to defend or indemnify, the injury cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions.").

Moreover, the Auto Exclusion contained in the Nautilus Policies excludes liability coverage for "property damage" arising out of the ownership, maintenance, use or entrustment to others of any "auto" owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading." Hawaii courts in deciding whether the auto exclusion applies consider the following three-factors: (1) whether the motor vehicle was an active accessory in causing the plaintiff's injuries; (2) whether there was an independent act breaking the causal link between "use" of the vehicle and the injuries inflicted; and (3) whether the injuries resulted from use of the vehicle for transportation purposes. <u>Oahu Transit Servs. v. Northfield Ins. Co.</u>, 107

Haw. 231, 236 (2005). In this case, the Smiths and Naones allege that SER Trucking contributed to the dumping of solid waste materials at the subject property, including but not limited to tires, concrete rubble and rebar. *See* Nautilus Complaint, Exs. "3" and "6", ¶10. Moreover, the Smiths and Naones allege that SER Trucking "paid David Souza and Island Top Soil, LLC to dump solid waste" at the dump site. *Id.* at ¶5. The Smiths and Naones' allegations trigger the Auto Exclusion to preclude liability coverage for those claims to the extent that the alleged consequences arose out of the "use" of an "auto" owned or operated by or rented or loaned to SER Trucking.  In other words, if SER Trucking is alleged to have performed the hauling of solid waste with its vehicles, the Auto Exclusion applies and precludes coverage.

Finally, the Total Pollution Exclusion bars coverage for the claims against SER Trucking. This exclusion prevents coverage for "'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." "Pollutants" are defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." In the Underlying Lawsuits, the Smiths and Naones allege that SER Trucking contributed to the dumping of solid waste at the subject property. Such waste allegedly consists of, but is not limited to, "waste tires, partially buried tires, concrete

rubble greater than eight inches in diameter, and partly buried rebar." *See* Nautilus Complaint, Exs. "3" and "6", ¶10. Both the Smiths and the Naones describe the waste allegedly dumped as "hazardous." *Id.* at Exs. "1" and "4", ¶11. Finally, the Smiths and Naones allege that the alleged dumping "may contaminate Plaintiffs' property . . . if there is flooding due to the obstructed streambed and cause contamination of the ground water in violation of EPA regulations. *Id.* at Exs. "1" and "4", ¶11. The damages alleged in the Underlying Lawsuits (*e.g.* potential soil and water contamination in violation of federal regulations) arise "out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape" of items that fall within the definition of "pollutants" *i.e.* solid wastes and thus coverage is precluded by the Total Pollution Exclusion.

### 3.    <u>Sufficiency of the Complaint</u>

The sufficiency of the Complaint weighs in favor of default judgment. The allegations of the Nautilus Complaint are sufficiently pled and supported by facts in the record.

### 4.    <u>Sum of Money at Stake in the Action</u>

The sum of money at stake favors in this action favors entry of default. No damages are sought as this action seeks a declaration of the rights of the parties to the several insurance policies.

### 5.    <u>Possibility of a Dispute Concerning Material Facts</u>

There is no dispute concerning material facts as this issue may be decided by comparing the Nautilus Policies to the allegations contained in the complaints in the Underlying Lawsuits. *See e.g.* <u>Dairy Road</u>, 92 Haw. at 413; <u>Commerce & Indus. Ins. Co. v. Bank of Hawaii</u>, 73 Haw. 322, 326 (1992); <u>Bayudan v. Tradewind Ins. Co.</u>, 87 Haw. 379, 387 (Haw.App. 1998).

### 6.    <u>Whether the Default Was Due to Excusable Neglect</u>

Defendant's default was not due to excusable neglect. SER Trucking was served with process and continually served with all filings by Nautilus in this matter, including the instant Motion. To date, there has been no appearance by SER Trucking, no motion to set aside the Entry of Default, nor any opposition to this Motion.

### 7.      **Policy Favoring Decisions on the Merits**

While the Court recognizes the strong policy favoring decisions on the merits, further proceedings in this matter would be futile given SER Trucking's failure to participate. Moreover, as an insurer's duty to defend its insured is contractual in nature, the Court must consider the language of the policy and apply general rules of contract interpretation to determine the rights of the parties. *See* <u>Sentinel</u>, 76 Haw. at 287. The merits of Nautilus's claims weigh in favor of a finding that Nautilus has no duty to defend and/or indemnify SER Trucking with respect to the Underlying Lawsuits. As such, the final *Eitel* factor does not weigh against entry of default judgment.

## III.    **CONCLUSION**

For the foregoing reasons, the Court FINDS AND RECOMMENDS that Nautilus's Motion for Default Judgment filed August 17, 2011 be GRANTED against Defendant SER Trucking as to all claims raised in Nautilus's Complaint for Declaratory Judgment filed March 15, 2011. Specifically, the Court recommends a finding that Nautilus has no duty to defend and/or indemnify SER Trucking with respect to the underlying Smith and Naone Lawsuits and that Judgment, attached as Exhibit "A", be entered in this matter.

DATED:  Honolulu, Hawaii, November 7, 2011.



Kevin S.C. Chang
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | ) | CIVIL NO. CV 11-00172 JMS -KSC |
| | ) | (Contract) |
| Plaintiff, | ) | |
| vs. | ) | JUDGMENT |
| | ) | |
| SER TRUCKING, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |

## JUDGMENT

Pursuant to Rules 54 and 58(a) of the Federal Rules of Civil Procedure, final judgment in this action disposing of all claims and issues is entered as follows:

1.       Judgment is entered in favor of Plaintiff Nautilus Insurance Company ("Nautilus") with respect to all claims against Defendant SER Trucking, Inc. ("SER Trucking") asserted in Nautilus's Complaint for Declaratory Judgment filed March 15, 2011.

2.       Plaintiff Nautilus has no duty to defend Defendant SER Trucking under Nautilus Policy Nos. NC260126, NC349181, NC438891, NC562305, NC664271, NC803433 ("Nautilus Policies") with respect to the following underlying civil actions pending in the Circuit Court of the First Circuit, State of Hawaii: John Smith, et al. v. David Souza, et al., Civil No. 08-1-1540-07 and Winston Naone, et al. v. David Souza, et al., Civil No. 08-1-1541-07) ("Underlying Lawsuits").

3.       Plaintiff Nautilus has no duty to indemnify Defendant SER Trucking under the Nautilus Policies with respect to the Underlying Lawsuits.

4.       There are no claims or parties remaining in this case and this is a final order.

# EXHIBIT "A"

Dated: Honolulu, Hawaii _____.


_____
JUDGE OF THE ABOVE-ENTITLED COURT